UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIA A. HORSEWOOD,<br><br>                Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>                Respondent. | Case No. 1:11-CV-337-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Maria Horsewood ("Petitioner") seeks review of the Commissioner of the Social Security Administration's final decision terminating Petitioner's disability benefits and ordering Petitioner to repay approximately $126,500 in overpaid benefits. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will remand to the Commissioner with further instructions.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Social Security Disability Insurance (SSDI)

**MEMORANDUM DECISION AND ORDER - 1**

benefits and Supplemental Security Income on October 30, 1989, alleging that she had been disabled since February 1, 1989. Her claim was denied on December 21, 1989. She did not appeal the denial. Petitioner filed another claim for a period of disability and disability insurance benefits on March 28, 1990. In July of 1990, Petitioner was found to be disabled as of December 22, 1989, due to a combination of juvenile onset diabetes mellitus and proliferative diabetic retinopathy.

In April of 2006, the Social Security Administration (the "Administration") notified Petitioner that, because she earned $734.40 per month in 2000 -- $34.40 above the presumptive amount for Substantial Gainful Activity (SGA) -- her eligibility for disability benefits had ceased as of January 2000. Cessation of Petitioner's benefits was affirmed on reconsideration, and Petitioner requested a hearing before an Administrative Law Judge. In May of 2009, Administrative Law Judge ("ALJ") Jack Reed conducted the hearing. In addition to Petitioner, vocational expert Richard Sherman and medical expert Laura Rosch, D.O., testified. The ALJ issued an unfavorable decision on July 7, 2009, and Petitioner requested review of the ALJ's decision.

In September of 2011, the Appeals Council denied Petitioner's request for review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision subject to judicial review. Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 45 years of age. Petitioner is a high school graduate whose prior work experience includes working as a waitress, counter

clerk, office worker, sales clerk and fitting room attendant.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552,

565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

The Commissioner uses an eight-step sequential process in evaluating whether a claimant's disability continues. 20 C.F.R.404.1594(f)(1-8). At step one of the sequential

**MEMORANDUM DECISION AND ORDER - 4**

evaluation for determining whether disability continues, the ALJ determines whether a claimant is engaging in Substantial Gainful Activity ("SGA"). If so, disability benefits are denied, regardless of medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b). Here, the ALJ found at step one that Petitioner was engaged in SGA beginning in January of 2000 because Petitioner's average monthly earnings throughout 2000 were $34.40 above the SGA cut-off amount of $700 per month. Consequently, the analysis ended at step one of the eight-step evaluation.

According to the federal regulations, "[s]ubstantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." *Id*. "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id*. In evaluating whether a claimant's work is both substantial and gainful, the Commissioner's "primary consideration will be the earnings [the claimant] derive[s] from the work activity," unless the Commissioner has information from the claimant, her employer, or others showing that not all of her earnings should be considered. 20 C.F.R. § 404.1574(a)(1); *See also* Social Security Ruling 83–33 ("[E]arnings provide an objective and feasible measurement of work.") (hereinafter SSR 83-33). [1]

For the period between July of 1999 and December of 2000, the regulations stipulated that monthly earnings averaging more than $700 "ordinarily show that [a

---

[1] *Available at* http://www.socialsecurity.gov/OP_Home/rulings/di/03/SSR83-33-di-03.html.

**MEMORANDUM DECISION AND ORDER - 5**

claimant] ha[s] engaged in substantial gainful activity," whereby "a rebuttable presumption arises that the [claimant] is no longer 'disabled' for the purpose of obtaining benefits." *Malatesta v. Astrue*, 2010 WL 3724033 (N.D.N.Y. Sept. 15, 2010) (alterations in original); *See Thomas v. Astrue*, 359 F. App'x 761, 762 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1574(b)(2).

When a claimant earns more than the primary amount set forth in the earning guidelines contained in SSR 83-33, a rebuttable presumption arises that the claimant was engaged in SGA. The focus, however, is on the "actual value" of the work performed. In determining what portion of a claimant's earnings represent the "actual value of the work" performed, the Commissioner must first ascertain the claimant's gross or total earnings, including any payments made in kind in lieu of cash. *See* 20 C.F.R. § 404.1574(b)(1); s*ee also* SSR 83–33. The Commissioner then deducts any subsidized earnings paid by the employer and any impairment-related work expenses (IRWEs) paid by the employee. 20 C.F.R. § 404.1574(b)(1).[2] A subsidy, which is a term of art in this context, occurs when an employer, usually because of a benevolent attitude toward a disabled individual, subsidizes the employee's earnings by paying more in wages than the reasonable value of the actual services performed. SSR 83-33.

When evaluating whether an individual has performed SGA, consideration is given to how well the work is performed. 20 C.F.R. § 404.1573. If an individual is unable, because of impairments, to do ordinary and simple tasks satisfactorily "without

---

[2] IRWEs are expenses related to the claimant's impairment as defined by 20 C.F.R. § 416.976. Typically, it includes expenses such as medical bills. IRWEs are not at issue here.

**MEMORANDUM DECISION AND ORDER - 6**

Case 1:11-cv-00337-CWD   Document 32   Filed 08/20/12   Page 7 of 16

more supervision or assistance than is usually given other people doing similar work," this may show that the individual is not working at the SGA level even if the claimant is receiving pay above the presumptive amount. *Id.* If an individual's work is performed "under special conditions that take into account [the individual's] impairment," the ALJ may find that the individual does not have the ability to engage in SGA. *Id.* Examples of "special conditions" include:

> (1) requiring and receiving special assistance from other employees in performing work; (2) being allowed to work irregular hours or taking frequent rest breaks; (3) being provided with special equipment or assigned work especially suited to an individual's impairment; (4) receiving help from other persons to prepare for work or get to work; (5) being allowed to perform at a lower standard of productivity or efficiency than other employees; or (6) being allowed to work because of family relationship, past association with an employer, or an employer's concern for the individual's welfare.

*Id.*; *See also* SSR 83-33 (social security policy statement regarding the procedure to use to determine the actual value of work counted for purposes of determining SGA).

The Commissioner's Program Policy Statement in SSR 83-33 states that an ALJ must first determine an individual's gross earnings, and then deduct the value of any subsidized earnings provided by an employer. The Ruling contemplates that the claimant's employer may designate how much of the employee's wage constitutes a subsidy so long as the designation is supported by an explanation as to how that subsidy was calculated. SSR 83-33. Petitioner's employer, Target Stores, did not provide this information. Thus, the ALJ was left to consider evidence in the record to determine the

**MEMORANDUM DECISION AND ORDER - 7**

approximate extent of a subsidy, if any, provided for in Petitioner's employment.

### 1. ALJ Failed to Consider and Apply All Relevant Law

Petitioner argues that the ALJ failed to apply the correct legal standard when the ALJ declined to use or even acknowledge the existence of SSR 83-33 with regard to the SGA determination. Social Security Rulings published in the Federal Register under the authority of the Commissioner of Social Security are binding on the Administration. 20 C.F.R. § 402.35(b)(1). SSRs reflect the official interpretation of the Social Security Act and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *See Bray v. Comm'r of SSA*, 554 F.3d 1219 (9th Cir. 2009); *See also Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 & n.6 (9th Cir. 1989). SSRs do not carry the force of law, but they are binding on administrative law judges nonetheless. *See Bray*, 554 F.3d at 1224.

Petitioner's average monthly earnings were $734.40 per month, which is just above the $700.00 per month non-statutorily blind substantial gainful activity guidelines for 2000. (Dkt 1.) The ALJ correctly presumed that the Petitioner was no longer disabled for the purpose of obtaining benefits unless she could show that at least $34.40 of her average monthly earnings was a subsidy or an impairment-related work expense ("IRWE") such that the calculated earnings would fall below $700. 20 C.F.R. § 404.1574(b)(2).

Petitioner asserts that the ALJ failed to consider SSR 83-33 and its application to what she believes were "special accommodations" provided to her during her

**MEMORANDUM DECISION AND ORDER - 8**

employment with Target Stores, such as being allowed to take frequent breaks, work reduced hours, miss several days of work per month, and work at about 75% productivity compared to unimpaired workers performing the same job. (Dkt 1.) The portions of SSR 83-33 cited by Petitioner, however, are inapplicable in this case. Specifically, Petitioner cites subsection (B)(3) of the ruling entitled "Earnings Which Are At or Above the Secondary Amount But Not More Than the Primary Amount May or May Not Demonstrate SGA." SSR 83-33. The amount of earnings reported by Petitioner for the year 2000 does not fall between the secondary and primary amounts.

Notwithstanding Petitioner's reliance on the wrong subsection of SSR 83-33, the Court agrees that the ALJ failed to consider and correctly apply SSR 83-33, which identifies a number of "special conditions" that an ALJ must consider when determining whether a claimant is engaged in SGA. Specifically, SSR 83-33(A)(1), entitled *Subsidies*, lays out relevant criteria that "indicate the strong possibility of a subsidy," including the fact that a "childhood disability is involved" or "there appears to be a marked discrepancy between the amount of pay and the value of the services." The ALJ references none of these factors in his decision. Given that the Petitioner has juvenile onset diabetes, claims at least a 25% difference between her output and that of similarly situated employees, and received a $2.00 raise for no reason, the Court would expect at least some analysis by the ALJ regarding these factors.

Instead, the ALJ's analysis of whether Petitioner's earnings were subsidized consists of a single paragraph, as follows:

**MEMORANDUM DECISION AND ORDER - 9**

> Furthermore, when computing non-statutorily blind substantial gainful activity, one subtracts any subsidy. On February 7, 2005, the claimant completed a *Work Activity Report – Employee* form, she listed several work accommodations; however, they were as to her employment at Toys R Us, not Target Stores (Ex. 15). On November 20, 2006, the claimant completed a *Statement of Claimant or Other Person* form in which she detailed several "accommodations" that she received from Target Stores. She noted that she had to have her husband, or someone else, take her to and pick her up from work, since her condition prevents her from driving. She noted that her manager had found her a job that she was able to do despite her condition. The claimant listed problems that she had seeing small children and with cold air temperatures. While estimated that she "worked at about 75% compared to other workers in the same job," she also admitted that she had received a "$2.00 raise" (Ex. 27). At the May 5, 2009 hearing, the claimant did not describe any significant accommodation or subsidy.

(AR 19) (footnote omitted). Following the ALJ's analysis, he concluded that Petitioner had not documented any significant subsidy of her job at Target Stores in 2000. (AR 19.) This conclusion, however, is not supported by substantial evidence in the record.

In her sworn statement from 2006, (AR 124), Petitioner explains that her job performance was adversely impacted because she became sick very easily due to immunosuppressant medications taken so that her body did not reject a transplanted kidney; she could not see small children due to problems with her eye sight brought on by diabetes; she was sensitive to cold air; she required a ride from her husband to work; she could not work whenever Target requested; and, when she did work, she claims to have worked at about 75% productivity compared to other workers in the same job. These circumstances fit the description of "special conditions" outlined in the federal

**MEMORANDUM DECISION AND ORDER - 10**

regulations and warranted further consideration by the ALJ. Moreover, given the subsidy-related facts listed in the ALJ's analysis -- Petitioner's inability to drive a car to work, her manager's attempts to find work she could perform with her condition, and her productivity rate at 75% that of an unimpaired person -- the Court finds the ALJ's conclusion that "the claimant has [not] documented any significant subsidy in 2000" is not supported by substantial evidence.

Based on the above discussion, the Court finds that the ALJ's failure to consider the evidence in the record supporting Petitioner's claim that she received a subsidy while working at Target Stores constituted error. *See Rossello v. Astrue*, 529 F.3d 1181, 1186 (D.C. Cir. 2008) (holding that error occurs if the ALJ fails to address evidence supporting a conclusion that an individual's earnings are subsidized). The Court will remand to the Commissioner to conduct the proper analysis under the factors set forth in 20 C.F.R § 404.1574(a), SSR 83-33, and the cases interpreting those rules. However, before the Commissioner can perform the analysis, he must develop facts for the record necessary to support a final disability decision, as explained below.

2.      **The ALJ Failed to Develop and Correct Facts for the Record**

Petitioner argues that the ALJ failed to adequately develop the record in this case on the subsidy issue. For the reasons below, the Court agrees.

In Social Security cases, ALJs have a special duty to fully and fairly develop the record and to assure that a claimant's interests are considered. *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). Because hearings on social security disability benefits are

**MEMORANDUM DECISION AND ORDER - 11**

nonadversarial proceedings, ALJs have an affirmative obligation to develop the administrative record, even in cases in which a claimant is represented by counsel. *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993); *See DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

Here, the ALJ did not make his decision based on substantial evidence, because he failed to adequately develop a record upon which a sound legal decision could be made. The record contains two sources that the ALJ failed to develop: (1) the *Statement of Claimant or Other Person* form ("SOC form"), dated November 26, 2006; and (2) Petitioner's testimony during the hearing on May 6, 2009.

In the SOC form, Petitioner claims multiple activities that might constitute a subsidy including: (1) inability to see small children because of a lack of depth perception; (2) sensitivity to cold air; (3) frequent illness due to immune-suppressant drugs; and (4) low productivity rate of about 75% compared to other workers performing the same job. While these alleged accommodations may or may not rise to the level of subsidy, the ALJ at least needed to establish a timeframe for when Petitioner alleges that Target Stores provided these accommodations because both the SOC form and the record in general is ambiguous in this regard. A timeframe is particularly important because the Administration's decision to terminate Petitioner's benefits is only concerned with Petitioner's earnings from 2000, yet Petitioner worked for Target Stores for over four years and her alleged accommodations could refer to periods of employment outside of 2000.

**MEMORANDUM DECISION AND ORDER - 12**

The focus at the 2009 hearing was whether a settlement that Petitioner received from Toys-R-Us ten years earlier in 1999 was properly reported. Petitioner did not have the opportunity to develop the record with regard to her accommodations because of the minimal focus on the subsidy issue. The most persuasive evidence of whether Petitioner was receiving a subsidy would have been from her employer. Second to that, the ALJ's next best option was a vocational expert, who would have been able to evaluate Petitioner's job duties as a dressing room attendant and to evaluate whether Petitioner's claim that she was working at a 75% productivity rate compared to other workers was accurate. A Vocational Expert was present at the hearing and testified, but his testimony did not touch on the subsidy issue. Instead, shortly after the Vocational Expert began to testify about Petitioner's work history and education, the questioning digressed into a discussion about which President was in office when the Americans with Disabilities Act was enacted:

> ALJ: When was that. . . act passed? It's a rather recent piece of legislation.
> VE: It's under George Bush, I think.
> ALJ: 1990s maybe.
> ATTY: Had to be prior to 1992.
> ALJ: You said Mr. Sherman, what?
> VE: I think it was passed under the first George Bush. Was his name George?
> ATTY: Uh-huh, Herbert Walker.
> VE: Yea.
> ALJ: Well actually that was the mid-1990s.
> ATTY: No, that would be too late.
> ALJ: But I didn't pay a lot of attention to it.
> ATTY: It would have been a law right before Clinton came in, as I recall, in '92.

**MEMORANDUM DECISION AND ORDER - 13**

(AR 474-475).[3] This is the last entry in the record for the vocational expert's testimony. Thirty-two pages of transcript concerning Petitioner's settlement with Toys-R-Us follows the Vocational Expert's testimony before the subsidy issue resurfaces.

Toward the conclusion of the hearing, Petitioner testified to a number of circumstances indicating that her work at Target Stores may have been subsidized: (1) she worked part-time; (2) she could not see well enough to determine if customers were stealing clothes; (3) unlike every other Target employee, she was not required to work the cash register because of her poor eyesight; and (4) Target accommodated her missing substantial amounts of work, sometimes multiple days per week. Yet, the ALJ summarily dismissed the existence of accommodations in his opinion, stating that "claimant did not describe any significant accommodation or subsidy [at the 2009 hearing]."[4] (AR 19).

Even if the ALJ concluded that the accommodations alleged by Petitioner did not rise to the level of a subsidy, that conclusion must be explained and supported by evidence in the record. *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000) ("'ALJs have a duty to analyze 'all of the relevant evidence' and to provide a

---

[3] The United States Congress enacted the Americans with Disabilities Act of 1990 (ADA). President George H. W. Bush signed it into law on July 26, 1990, and Congress later amended with changes effective January 1, 2009. Title I employment provisions apply to private employers, State and local governments, employment agencies, and labor unions. Employers with 25 or more employees were covered as of July 26, 1992. Employers with 15 or more employees were covered two years later, beginning July 26, 1994.

[4] The Court infers that Petitioner testified during her hearing about her employment during 2000 because Petitioner describes her position as a fitting attendant. According to her *Report on Continuing Disability Interview* form dated May 10, 2000, she worked in 2000 as a fitting room attendant. (AR 78)

**MEMORANDUM DECISION AND ORDER - 14**

sufficient explanation for their 'rationale in crediting certain evidence.'"). The ALJ could have rejected Petitioner's testimony or her written statement from 2006, but such a determination would likewise have to be explained.[5] In total, the subsidy issue constitutes a mere five pages of a fifty-one page transcript. The cursory treatment given to the subsidy issue during the hearing and in the ALJ's written decision indicates to the Court that this issue was of little concern to the ALJ.

The Court finds that the record contains insufficient factual determinations regarding Petitioner's alleged subsidies for the ALJ to have arrived at a supportable decision regarding Petitioner's SGA or disability determination. For that reason, and for the reasons explained more fully above, the Court will remand this case with instructions to develop the record further and then to follow applicable law and regulations before deciding the merits of the case.

---

[5] The ALJ did not make an express adverse credibility determination in this case. In a footnote in his decision, the ALJ notes a discrepancy between Petitioner's descriptions of the work she performed at Target. The footnote ends with the following notation: "Credibility?" (AR 19.) Whether the notation was meant to be in the final decision – or a notation from an earlier draft of the decision mistakenly left in the final draft – the notation does not constitute an express adverse credibility finding.

**MEMORANDUM DECISION AND ORDER - 15**

## ORDER

**IT IS HEREBY ORDERED THAT:**

1) Petitioner's Petition for Review (Dkt. 1) is **GRANTED**

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **August 20, 2012**

Honorable Candy W. Dale
United States Magistrate Judge